**FILED**
**CLERK**

**4/22/2026**

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ALBA COREAS,

<em>Plaintiff,</em>

-against-

ANGELES BEAUTY SALON INC.,
ANGELICA HERNANDEZ, an
individual, CARMEN HERNANDEZ
AYALA, an individual,

<em>Defendants.</em>

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**REPORT AND**
**RECOMMENDATION**

25-CV-00604 (GRB) (JMW)

**A P P E A R A N C E S:**

Raymond Nardo, Esq.
**Raymond Nardo, P.C.**
129 Third St.
Mineola, NY 11501[1]
*Attorneys for Plaintiff*

**Angeles Beauty Salon Inc.**
90 S Main Street
Freeport, NY 11520
*Defendant Appearing Pro se*

**Angelica Hernandez**
90 S Main Street
Freeport, NY 11520
*Defendant Appearing Pro se*

---

[1] Counsel's address appears as indicated in this Report & Recommendation in the signature block of the Complaint. However, the docket indicates a different address. Counsel for Plaintiff is directed to ensure the correct address is provided on ECF.

**WICKS,** Magistrate Judge:

Plaintiff Alba Coreas ("Plaintiff") commenced this action against Angeles Beauty Salon Inc. ("Salon"), Angelica Hernandez ("A. Hernandez") and Carmen Hernandez ("C. Hernandez"[2] and collectively, the "Defendants"), alleging *inter alia* that Defendants failed to pay her minimum and overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and various sections of the New York Labor Law ("NYLL").  (*See generally*, ECF No. 1.)  Before the Court on referral from the Hon. Gary R. Brown is Plaintiff's Motion for Default Judgment (ECF No. 27). (*See* Electronic Order dated 11/24/2025.) For the reasons stated herein, the undersigned respectfully recommends that Plaintiff's Motion for Default Judgment (ECF No. 27) be **GRANTED**.

## FACTUAL BACKGROUND

The following allegations are drawn from the Complaint and are assumed true for purposes of this motion. (ECF No. 1.) The Defendants own and operate Angeles Beauty Salon, located at 90 S. Main Street, Freeport, New York. (*Id.* at ¶ 14.) Plaintiff was employed by the Defendants as a colorist from November 25, 2024 through December 19, 2024. (*Id.* at ¶ 7.) Plaintiff was not exempt from the FLSA. (*Id.* at ¶ 8.) Plaintiff worked approximately eighty four (84) hours per week, and was paid $300 daily. (*Id.* at ¶¶ 9-10.) Plaintiff was an employee as defined by the FLSA, did not receive overtime wages and was not allowed to take the required uninterrupted thirty-minute breaks. (*Id.* at ¶¶ 11-13.) Defendant Salon is an enterprise engaged in commerce or in the production of goods for commerce and has an annual gross volume of sales in excess of $500,000. (*Id.* at ¶ 16.)

---

[2] Defendant C. Hernandez is now voluntarily dismissed from the case as of September 18, 2025. (*See* ECF No. 23.)

A. Hernandez is an owner or officer of Salon and exercised operational control over the company, including the control, maintenance, and oversight of the employees. (*Id.* at ¶¶ 18–21.) A. Hernandez hired Plaintiff and set her pay rate. (*Id.* at ¶ 19.) C. Hernandez maintained the same control as she terminated Plaintiff. (*Id.* at ¶ 21.)

Plaintiff further alleges that she was paid a flat rate of $300 per day rather than an hourly wage. (*Id.* at ¶ 10.) Defendants failed to pay Plaintiff minimum wage and overtime compensation at one and one-half times her regular rate of pay for hours worked in excess of forty per week. (*Id.* at ¶¶ 2, 11.) Likewise, Defendants failed to pay spread-of-hours compensation for days in which her workday exceeded ten hours. (*Id.* at ¶¶ 12, 28–29.) Additionally, Defendants failed to provide required wage notices at the time of hiring and failed to furnish accurate wage statements with each payment of wages, in violation of the NYLL. (*Id.* at ¶¶ 24–27.)

Accordingly, Plaintiff asserts seven claims arising from her employment: (i) failure to pay minimum wages in violation of the FLSA; (ii) failure to pay overtime wages in violation of the FLSA; (iii) failure to pay minimum wages in violation of the NYLL; (iv) failure to pay overtime wages in violation of the NYLL; (v) failure to provide wage notices in violation of NYLL; (vi) failure to provide wage statements in violation of NYLL; and (vii) failure to pay spread of hours compensation in violation of the NYLL. Plaintiff alleges that Defendants' conduct was willful, intentional, and not in good faith. (*Id.* at ¶¶ 34–35, 40–41.)

Therefore Plaintiff seeks: (i) damages for unpaid minimum, overtime wages and spread of hours; (ii) liquidated damages under the FLSA and/or NYLL; (iii) $5,000 statutory damages under the NYLL, (iv) attorneys' fees and costs under the FLSA and NYLL, (v) prejudgment and post-judgment interest; (vi) attorneys' fees and costs; (vii) injunctive and declaratory relief; and (viii) such other and further relief as the Court deems just and proper. (*Id.* at pp. 13–14.)

3

**PROCEDURAL BACKGROUND**

On February 3, 2025, Plaintiff filed the instant Complaint (ECF No. 1.) On February 4, 2025, summonses were issued (ECF No. 4) and returned executed on February 17, 2025. (ECF Nos. 5–7.) Defendants Salon and A. Hernandez through counsel appeared on March 5, 2025. (ECF No. 8). Plaintiff subsequently filed a Notice of Voluntary Dismissal, without prejudice as to Defendant C. Hernandez. (ECF No. 23.)[3] Multiple extensions of time were granted for the Defendants to file an answer or otherwise respond to the Complaint as representations were set forth that settlement discussions were ongoing. (*See* Electronic Orders dated 3/6/2025, 4/4/2025, 5/9/2025, and 6/7/2025.)  However, on June 19, 2025, counsel for Defendants filed a motion to withdraw (ECF No. 13), stating that the attorney-client relationship had become irreconcilable and that Defendants had closed their salon and could no longer afford to pay a substantial settlement or attorney's fees. (ECF No. 13-2 at 7.) The motion was granted, and the case was stayed for thirty days, until August 6, 2025, to allow Defendants an opportunity to retain new counsel (ECF No. 16.) The Court also scheduled an in-person conference for August 18, 2025, at which time Defendants could appear pro se or with new counsel. (*Id.*) After adjournments, the in-person conference was ultimately held on September 17, 2025, at which Defendants failed to appear. (ECF No. 21.) The Court then directed Plaintiff to file a request for a Certificate of Default on or before October 10, 2025. (*Id.*) Plaintiff complied and filed the request on September 18, 2025 (ECF No. 24), and the Clerk of Court entered a Certificate of Default on September 19, 2025 (ECF No. 25.)

Thereafter, Plaintiff filed Default Judgment motion (ECF No. 26) but failed to comply with Judge Brown's Individual Practice Rules and the motion was denied. (Electronic Order

---

[3] In light of Plaintiff's voluntary dismissal of C. Hernandez, all subsequent references to 'Defendants' herein refer only to the remaining Defendants.

dated 10/21/2025.) On November 20, 2025, plaintiff renewed the motion for default judgment. (ECF No. 27.) On November 24, 2025, the motion was referred from Judge Brown for a Report and Recommendation. (Electronic Order dated 11/24/2025.) The Court requested supplemental filings, and service on Defendants, all of which was complied with. (ECF Nos. 28-29.) To date, Defendants have not filed opposition nor retained new counsel or otherwise further appeared.

## THE LEGAL FRAMEWORK

There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55. First, as here, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action. *See* Fed. R. Civ. P. 55(a); *see also* E.D.N.Y. Loc. Civ. R. 55.1(b) and 55.2. After the clerk's certificate of default is issued and posted on the docket, a party may apply for entry of a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Loc. Civ. R. 55.2. The decision to grant a motion for default is left to the sound discretion of the district court. *No Limit Auto Enterprises, Inc. v. No Limit Auto Body, Inc.*, No. 21-CV-4755 (AMD)(JMW), 2022 WL 18399477, at *2 (E.D.N.Y. Dec. 12, 2022), *report and recommendation adopted*, 2023 WL 348271 (E.D.N.Y. Jan. 19, 2023). As the Clerk has already entered default against Defendants (ECF No. 25), the Court is primarily concerned with Plaintiff's compliance with E.D.N.Y. Loc. Civ. R. 55.2.

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878 (RJD)(JMA), 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (finding that a default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true). "Where

5

damages are susceptible to simple mathematical calculation and the plaintiff provides a 'sufficient basis from which to evaluate the fairness' of the requested damages, no evidentiary hearing is necessary." *Euro Pac. Capital Inc. v. Bohai Pharm. Grp., Inc.*, No. 15-CV-4410 (VM), 2018 WL 1596192, at \*5 (S.D.N.Y. Mar. 28, 2018) (quoting *Am. Jewish Comm.*, 2016 WL 3365313, at \*4).

However, a plaintiff must still demonstrate that the allegations set forth in the Complaint state valid claims. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("[A] district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted). The Court, thus, must ensure: (i) Plaintiff satisfied all required procedural steps in moving for default judgment, *see* Loc. Civ. R. 55.2; and (ii) Plaintiff's allegations, when accepted as true, establish liability as a matter of law, *see Finkel*, 577 F.3d at 84; and (iii) Plaintiff's request for damages is adequately supported.

With this legal framework in mind, the Court analyzes the instant application.

## **DISCUSSION**

### I.    **Procedural Compliance**

Local Civil Rule 7.1 requires motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion.  E.D.N.Y. Local R. 7.1(a)(1) - (3).  Local Civil Rule 55.2 requires that a party moving for default judgment append to its application an affidavit or declaration demonstrating that (A) the Clerk has entered default against the Defendants, (B) the movant has complied with the SCRA, and (C) that the individual defaulting defendant is not a minor or

incompetent person, as well as all papers required by E.D.N.Y. Local Rule 7.1 (*supra*), and a proposed judgment and certificate of service that all documents in connection with the motion for default judgment has been personally served on or mailed to the defaulting defendants' residence or business address.  E.D.N.Y. Local R. 55.2(a)(1)-(3).

The Local Rules provide that the moving party "must file a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs." E.D.N.Y. Local R. 55.2(c).

With respect to the non-military affidavit, before a default judgment can be entered for the plaintiff, the SCRA commands that the Court "require the plaintiff to file with the court an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. App. § 521; *ADI Glob. Distribution v. Green*, No. 20-CV-03869 (AMD) (JMW), 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023), *report and recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023). The SCRA requirement is inapplicable where, as here as to Defendant Salon which is a corporate entity rather than an individual. (*See* ECF No. 12-3 at ¶ 4); *see also Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-CV-5624 (ARR) (VMS), 2020 WL 6370148, at *9 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted*, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (only applying service members civil relief act to the individual defendants). Conversely, with respect to A. Hernandez, Plaintiff submits an exhibit of the SCRA Department of Defense Manpower Data Center stating that she was not an active military member, and an affidavit stating the same. (*See* ECF No. 29-2; *see also* ECF No. 27-3, Nardo Decl. at ¶ 1.)

Additionally, Plaintiff's motion against the defaulting Defendant complies with Local

7

Rule 7.1 and Local Rule 55.2(a)(2) because it includes (1) a notice of motion (ECF No. 27); (2) a memorandum of law (ECF No. 29-1 ); (3) affidavits and exhibits to support Plaintiff's contentions (*see* ECF Nos. 27-1-5); and (4) a proposed order detailing the proposed judgment (ECF No. 27-6). The motion further complies with Local Rule 55, as Plaintiff properly attached and submitted a declaration affirming that the Certificate of Default was entered by the Court on September 19, 2025 (ECF No. 27-5) and a declaration that Defendants are not an infant, in the military, or an incompetent person. (ECF No. 27-3 at 2.) The parties have also filed an affidavit of service of the requisite documents as to Defendants via first class mail. (ECF Nos. 27-7; 29-3.)

Finally, Plaintiff complied in all respects with Local Rule 55.2(c) by filing a statement of damages demonstrating the proposed damages and basis for the element of damages. E.D.N.Y. Local R. 55.2(c).  As to Plaintiff's damages, Plaintiff submits a breakdown of her individual FLSA/NYLL overtime damages, liquidated damages, statutory damages, and interest. (ECF No 27-2.) Accordingly, the undersigned finds that the Motion for Default Judgment is procedurally proper and now turns to the merits.

## II. Jurisdiction

### a. Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).  Since a judgment rendered against a defendant over whom the Court does not have personal jurisdiction can be vacated pursuant to Rule 60(b)(4), it "preserves judicial economy for the court to assess personal jurisdiction from the outset and thereby avoid rendering a void judgment." *Foshan Shunde Xinrunlian Textile Co. v. Asia 153*

8

*Ltd.*, No. 14-cv-4697 (DLI) (SMG), 2017 WL 696025, at *2 (E.D.N.Y. Jan. 30, 2017). Here, "a *sua sponte* assessment of personal jurisdiction is appropriate" because while Defendants were initially represented by counsel, no objections to personal jurisdiction were raised nor were any raised while Defendants are pro se. *Id*. Additionally, as Defendant Salon is a corporate entity, it may not represent itself *pro se*. *See Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 192 (2d Cir. 2006) (collecting cases on *pro se* corporate defendants and the ability to enter default judgment against such unrepresented entities); *see also DMKA LLC v. Chandler W T LLC*, No. 23-CV-3296 (BMC), 2024 WL 406549, at *1 (E.D.N.Y. Feb. 2, 2024) (granting default judgment against a *pro se* corporate defendant).

For a court to exercise personal jurisdiction: (i) a plaintiff must complete proper service of process, (ii) there must be a statutory basis for personal jurisdiction that renders such service of process effective, and (iii) the exercise of personal jurisdiction must comport with constitutional due process principles. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673. F.3d 50, 60–61 (2d Cir. 2012).

Service of process was procedurally proper here. Rule 4(c) requires that a summons must be served with a copy of the Complaint and by a person who is at least 18 years old and not a party to the case. *See* Fed. R. Civ. P. 4(c). Additionally, Rule 4(e) permits service on individuals to be made (i) pursuant to the law of the state in which the district court is located, (ii) by delivering the summons and complaint to the individual personally, or (iii) by leaving a copy of the summons and complaint "at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there. . . ." Fed. R. Civ. P. 4(e). Courts have held that service on employees, co-workers, receptionists, doormen, and other individuals who meet the "suitable age and discretion" standard at a defendant's actual place of business is valid. *See*

9

*Templos v. Luna Cuisine, Inc.*, 738 F. Supp. 3d 325, 331 (E.D.N.Y. 2024) (stating that under New York law, "suitability of the person served depends on context, but courts routinely find service on employees and co-workers sufficient"). Here, Defendants A. Hernandez and C. Hernandez were served with a copy of the Summons and Complaint on February 11, 2025, when a process server delivered the documents to the Defendants' employee, Ms. Diana, a person of suitable age and discretion at the property. (ECF Nos. 6-7.)

Further, Rule 4(h) provides that a domestic or foreign corporation may be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process. . . ." *See* Fed. R. Civ. P. 4(h)(1)(B); *Hartford Fire Ins. Co. v. Queens Cnty. Carting, Inc.*, No. 20-CV-01844 (NSR), 2022 WL 254367, at *2 (S.D.N.Y. Jan. 27, 2022) (quoting Fed. R. Civ. P. 4(h)(1)(A); (e)(1)) ("Under Rule 4(h)(1)(A), a corporation may be served 'in the manner prescribed by Rule 4(e)(1) for serving an individual,' which includes 'following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]'"). Under New York law, service on a corporation may be made by serving the authorized agent. *See* N.Y. C.P.L.R. § 311(a)(1) ("Personal service upon a corporation… shall be made by delivering the summons… to an officer, director, managing or general agent, cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service."); *see also Flagstar Fin. & Leasing, LLC v. ANR Logistics LLC*, No. 24-CV-08469 (JS) (JMW), 2025 WL 3451989, at *5 (E.D.N.Y. Oct. 28, 2025) (finding service was proper under Fed. R. Civ. P. 4(h), where an entity was served delivering the Summons & Complaint to an authorized agent of the Defendant).

Here, Defendant Salon was served with a copy of the Summons and Complaint on February 11, 2025, by service upon Diana, who affirmatively represented upon verbal inquiry that she was authorized to accept service on behalf of the Salon. (ECF No. 5.) Accordingly, service on all Defendants was proper.

"Personal jurisdiction in a diversity case is determined by the law of the state in which the district court sits." *SAS Grp., Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 547 (S.D.N.Y. 2003) (citing *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir.1999)). The same goes for a case arising under federal question jurisdiction unless the applicable federal statute contemplates nationwide service of process, which, as relevant here, the FLSA does not. *Bonilla*, 2025 WL 745906, at *4 (citing *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 277 (S.D.N.Y. 2019)). Thus, the Court first looks to New York law for the purpose of determining personal jurisdiction over Defendants in New York. Then, the Court evaluates whether the "exercise of jurisdiction under state law satisfies federal due process requirements of 'fair play and substantial justice.'" *Mortg. Funding Corp. v. Boyer Lake Pointe, LLC*, 379 F. Supp. 2d 282, 286 (E.D.N.Y. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Under New York law, there are two routes for a court to exercise personal jurisdiction. The Court considers each in turn below:

### i.   General Jurisdiction

The Court considers this issue in light of the Supreme Court's pronouncements in *Daimler* and *Goodyear*, where the Court noted that other than in "exceptional cases" the exercise of general jurisdiction is confined to a corporation's "place of incorporation and principal place of business." *See Aybar v. Aybar*, 177 N.E.3d 1257, 1265 (2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014)); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915,

924 (2011)). Here, Defendant Salon is a New York Corporation, with its place of business in Freeport, New York. (ECF No. 1 at ¶ 14.) Thus, the Court has general jurisdiction over Defendant Salon.

Additionally, the Court has general jurisdiction over individual Defendant A. Hernandez and C. Hernandez who were served in New York. *See Burham v. Superior Court of Cali.*, 495 U.S. 604, 610–11 (1990) ("Among the most firmly established principles of personal jurisdiction" is that courts have general jurisdiction over those who are physically present in the state and who were properly served with process while in the state, thereby empowering courts to "retain jurisdiction to enter judgment against him, no matter how fleeting his visit."); *J McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880–81 (2011) ("Presence within a State at the time suit commences through service of process . . . support[s] exercise of the general jurisdiction of the State's courts . . . ."); *see also Reich v. Lopez*, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014) ("For general jurisdiction over an individual to comport with due process, Defendants must be domiciled in New York, served in New York, or have otherwise consented to the court's jurisdiction.") Accordingly, the undersigned recommends a finding that the Court does have "general jurisdiction" over Defendants.

### ii. Specific Jurisdiction

On the other hand, specific jurisdiction is present when "a [s]tate exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Great W. Ins. Co. v. Graham*, No. 18-CV-6249 (VSB), 2020 WL 3415026, at *10 (S.D.N.Y. June 22, 2020) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). However, having found general jurisdiction is present, a finding of specific jurisdiction is not required. *See Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 397

n.1 (S.D.N.Y. 2004) ("Where general jurisdiction is asserted, the claim need not arise out of the defendant's contacts with the forum state ….") Indeed, specific jurisdiction is required over non-residents, unlike here, where Defendants are domiciled in New York. *See In re Stillwater Cap. Partners Inc. Litig.*, 851 F. Supp. 2d 556, 567 (S.D.N.Y. 2012) (stating that a court may exercise specific jurisdiction over a non-domiciliary if certain requirements are met).

### III.   Default factors

In evaluating whether to grant a default judgment, courts consider: (i) whether the defendant's default is willful; (ii) whether the defendant has a meritorious defense to plaintiff's claims; and (iii) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied. *See Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317 (ADS)(AKT), 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013); *cf. Brown v. Gabbidon*, No. 06-CV-8148 (HB), 2007 WL 1423788, at *4 (S.D.N.Y. May 14, 2007) ("A discussion of prejudice, willfulness and meritorious defenses is required once there is an entry of default or a default judgment and the court considers a request by a defaulting party to vacate that entry pursuant to Rules 55(c) or 60(b).").

Consideration of these three factors leads to a recommendation that an entry of default judgment is appropriate where, as here, Defendants appeared initially through counsel (ECF No. 1) until their counsel withdrew representation (ECF No. 13) and since then they have failed to appear and present any defense, and Plaintiff is left with no further steps to take to secure relief. *See ADI Glob. Distribution*, 2023 WL 3355049 at *4; *see also Flooring Experts, Inc.*, 2013 WL 4042357 at *3 (when a defendant is continuously and completely unresponsive the failure to

respond is considered willful), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013); *Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11-CV-46 (JS) (AKT), 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012) ("[T]he Court is unable to make a determination whether the Defendants have a meritorious defense since no such defense has been presented to the Court"), *report and recommendation adopted*, 2012 WL 832452 (E.D.N.Y. Mar. 12, 2012); *Northwell Health, Inc. v. Northwell Staffing Agency, LLC*, No. 17-CV-1611 (DRH) (AKT), 2018 WL 1525803, at *9 (E.D.N.Y. Mar. 1, 2018) (noting that denying the motion for default judgment would be prejudicial to Plaintiff since "there are no additional steps available to secure relief in this Court"), *report and recommendation adopted*, 2018 WL 1525698 (E.D.N.Y. Mar. 28, 2018) (citations omitted). As previously noted, Salon may not represent itself pro se in this Court. *See Grace*, 443 F.3d at 192 (2d Cir. 2006); *DMKA LLC*, 2024 WL 406549, at *1.

## IV.   Liability

In cases of default, the court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]" *Finkel*, 577 F.3d at 84. A defendant's default is considered an admission of all of the well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016).

### A. Statute of Limitations

Before addressing the merits of Plaintiff's claims, the Court must determine if Plaintiff brought her claims in a timely manner. *See Quintero v. Angels of the World, Inc.*, No. 19-cv-6126 (DG), 2021 WL 4464123, at *3 (E.D.N.Y Sep. 10, 2021) (analyzing the statute of

14

limitations to ensure the causes of action were not time barred before delving into the merits of each), *report and recommendation adopted*, 2021 WL 4463488 (E.D.N.Y. Sep. 29, 2021).

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)). "When a defendant defaults, the violation is considered 'willful' and the three-year statute of limitations applies." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *5 (E.D.N.Y. Sept. 29, 2023) (citation omitted). Though the statute of limitations begins when the employee starts her employment, for purposes of establishing the statute of limitations under the FLSA, "a new cause of action accrues with each payday following an allegedly unlawful pay period." *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 277 (E.D.N.Y. 2013).

"Pragmatically speaking, therefore, where willful conduct has been proven, FLSA overtime claims asserted three years prior to commencement of the lawsuit are considered timely." *Bonilla*, 2025 WL 745906, at *6 (citing *Fakir v. Skyrise Rock Corp.*, No. 16-CV-4695 (JPO), 2016 WL 7192095, at *3 (S.D.N.Y. Dec. 12, 2016)) (concluding that some of plaintiff's FLSA claims, which seek redress for conduct beginning as early as May 1, 2010, are untimely as she filed her complaint on June 20, 2016, thus FLSA overtime claims prior to June 20, 2013 were subject to dismissal); *Gunawan v. Sake Sushi Restaurant*, 897 F. Supp. 2d 76, 87 (E.D.N.Y. 2012) (finding, where the complaint was filed on November 16, 2009 and alleged willful conduct under the FLSA, "[plaintiff] may recover on her federal claims for unpaid wages that accrued on or after November 16, 2006.").

Here, Plaintiff commenced this action on February 3, 2025. (ECF No. 1.) Plaintiff was employed by Defendants from on or about November 25, 2024, through December 19, 2024. (*Id.* at ¶ 7.)  Because Defendants have defaulted, their conduct is presumed willful for purposes of Plaintiff's FLSA claims, thereby extending the statute of limitations to three years. Accordingly, any FLSA claims arising on or after February 3, 2022, are timely. Because Plaintiff's entire period of employment, from November 25, 2024, through December 19, 2024, falls within this three-year period, all of Plaintiff's FLSA claims are timely.

Conversely, the New York Labor Law ("NYLL") provides for a six-year statute of limitations for wage-and-hour claims. *See* N.Y. Lab. L. §§ 198(3), 663(3). The limitations period begins to run when the employee performs the work for which he was allegedly underpaid. *See Rodriguez v. Queens Convenience Deli Corp.*, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011). Because Plaintiff commenced this action on February 3, 2025 (ECF No. 1), Plaintiff's NYLL claims arising on or after February 3, 2019, are timely. Plaintiff's entire period of employment from November 25, 2024, through December 19, 2024, falls within this six-year limitations period. *See Fermin v. Las Delicias Peruanas Restaurant, Inc.*, 93 F. Supp. 3d 19, 38 (E.D.N.Y. 2015) ("As the Complaint was filed on January 27, 2014, the state law limitations period [under the NYLL] includes claims dated from January 27, 2008 to January 27, 2014."). Accordingly, all of Plaintiff's NYLL claims are timely.

## B.  FLSA Overtime Claim

Plaintiff alleges that Defendant failed to pay her overtime wages in excess of forty hours (40) per workweek that she was statutorily owed under the FLSA. (ECF No. 1 at ¶¶ 27, 44, 57.) To successfully plead an overtime claim under the FLSA, a plaintiff must establish: "(1) the employer was an enterprise engaged in commerce or in the production of goods for commerce;

(2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) that the plaintiff worked in excess of forty (40) hours in a given workweek and did not receive overtime compensation for such work." *Erdemir v. Allstate Marble & Granite, Kitchens & Baths Inc.*, 704 F. Supp. 3d 337, 357 (E.D.N.Y. 2023) (citing 29 U.S.C. §207(a)(1)).

### 1. Whether Defendants were engaged in Commerce or in the Production of Goods for commerce

Employers are subject to FLSA's overtime requirements if the employees are "engaged in commerce or in the production of goods for commerce" or "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). Courts have deemed these two methods as individual coverage and enterprise coverage, respectively. *Cao v. Flushing Paris Wedding LLC*, 727 F. Supp. 3d 239, 273 (E.D.N.Y. 2024); *Erdemir*, 2023 WL 8270891, at *11.

### a. Enterprise Coverage

Enterprise coverage is defined statutorily as when an employer has: (i) employees engaged in commerce or in the production of goods for commerce; and (ii) an annual gross volume of sales greater than $500,000. 29 U.S.C. § 203(s)(1)(A). The burden on plaintiffs to establish enterprise coverage is light. *Oyenuga v. Presidential Sec. Servs. LLC,* No. 22-CV-4972 (DG) (RER), 2023 WL 7687237, at *3 (E.D.N.Y. Sept. 25, 2023) (recognizing enterprise coverage notwithstanding conclusory allegations in the complaint). Courts may make logical inferences based on the nature of the business to find that employees are engaged in commerce. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) (inferring a restaurant is engaged in commerce to procure cooking supplies).

Merely parroting statutory language without including specific facts is oftentimes insufficient to meet enterprise coverage. *See Zavada v. Mehbizar, Inc.*, No. 2:23-cv-03682-

OEM-ARL, 2024 WL 759351, at *3 (E.D.N.Y. Feb. 24, 2024) ("Plaintiff's barebones invocation of the statutory language under the FLSA does not suffice to plead enterprise coverage under the FLSA."). However, in the context of a default, courts generally do not require additional factual allegations to establish enterprise coverage, and the statutory language may be satisfactory. *Garcia v. 2390 Creston Realty LLC*, No. 22-CV-09172-LGS, 2023 WL 4849889, at *6 (S.D.N.Y. July 28, 2023). Importantly, courts may make logical inferences based on the nature of the business to find that employees engaged in commerce. *See Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 119 (E.D.N.Y. 2011) (inferring a cleaning enterprise is engaged in commerce to procure cleaning supplies); *see also Gao v. Kerry Nails Salon Corp.*, No. 18-CV-10448 (PGG) (KHP), 2020 WL 8734739, at *3 (S.D.N.Y. Sept. 22, 2020), (S.D.N.Y. Feb. 22, 2021), *report and recommendation adopted*, No. 18-CIV-10448 (PGG)(KHP), 2021 WL 673460 (S.D.N.Y. Feb. 22, 2021) (inferring material handled by nail salon employees are not different than material handled by janitorial or cleaning services).

Here, the Complaint specifically alleges that Salon "engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, including scissors, barbicide, curling irons, dryers, and salon equipment." (ECF No. 1 at ¶ 16.) These allegations are sufficient to show that Plaintiff was engaged in interstate commerce in cleaning services for enterprise coverage purposes. Indeed, "[o]ther cases discussing this element in an FLSA context have held that it is logical to conclude that janitorial/cleaning supplies have moved in interstate commerce." *Almighty Cleaning, Inc.*, 784 F. Supp. 2d at 119 (concluding that it was "logical to infer that the cleaning supplies utilized by the Plaintiffs originated outside of New York"); *see also Soto v. Miss Laser Inc.*, No. 19-CV-04745 (HG)(CLP), 2023 WL 319547, at *5 (E.D.N.Y.

Jan. 19, 2023) (concluding it reasonable to infer that at least some of the soaps, chemicals, derma rollers, and/or laser hair removal tools used by laser employees originated outside of New York). Plaintiff's duties included coloring of hair, sweeping floors and cleaning the bathroom. (*Id.* 1 at ¶ 7.) *See Shu Lan Chen v. Gypsophila Nail & Spa Inc.,* No. 15-CV-2520 (JPO), 2015 WL 3473510, at *3 (S.D.N.Y. June 2, 2015) (holding that it was reasonable to infer that defendants' employees handled goods or materials that had moved in interstate commerce because the complaint alleged that plaintiff worked as a nail technician and beautician performing manicures and cleaning duties, including sweeping and garbage removal).

Under the second prong to establish enterprise coverage, Plaintiff alleges that Salon has "an annual gross volume of sales in excess of $500,000." (*Id.* at ¶ 16.) Ordinarily, though conclusory, such a statement suffices in circumstances where a business engaging in interstate commerce grosses over $500,000 in annual revenue by virtue of the enterprise itself. *See Ore v. H&C Cleaning Corp.*, No. 22-CV-20 (AMD) (RER), 2022 WL 19520879, at *8 (E.D.N.Y. Dec. 14, 2022), *report and recommendation adopted*, 2023 WL 2522814 (E.D.N.Y. Mar. 15, 2023) (concluding that the allegation that "upon information and belief, the gross annual volume of sales made or business done by H & C Cleaning in 2020 and 2021 was not less than $500,000.00" was sufficient to "meet the pleading requirement for enterprise liability under the FLSA").

Here, Plaintiff further alleges that she worked seven days per week (*id.* at ¶ 9), supporting an inference as to the volume of business conducted. *See Shu Lan Chen,* 2015 WL 3473510, at *3 (holding that enterprise coverage was adequately alleged where the nature of the nail salon business, its days of operation, and number of employees supported a reasonable inference that

19

the statutory requirements were satisfied). Accordingly, the undersigned recommends finding that Plaintiff has sufficiently established enterprise coverage over Salon under the FLSA.

### a. Individual Coverage

Individual coverage is an alternative means by which a plaintiff could establish FLSA coverage, protecting employees based on their own job duties relevant to the employer's business. *See Kim v. J&J Safetymate Corp.*, No. 22-CV-1070 (OEM) (TAM), 2024 WL 734130, at *4 (E.D.N.Y. Feb. 2, 2024). Individual coverage is implicated where plaintiff demonstrates he was personally "engaged in commerce or in the production of good for commerce." *Zavada*, 2024 WL 759351 at *3. An employee is engaged in commerce when "a substantial part of [an] employee's work [is] related to interstate commerce." *Id.* Commerce is known as the "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). As such, employees are "engaged in commerce within the meaning of the [FLSA] when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles and including information and intelligence) among the several States or between any State and any place outside thereof". *Santacruz v. Blok Chocolatier LLC*, No. 19-CV-544-EK-SJB, 2021 WL 4341103, at *3 (E.D.N.Y. June 23, 2021) (internal quotations omitted). Employment activities that "simply affect or indirectly relate to interstate commerce" are insufficient to establish individual coverage. *Zavada*, 2024 WL 759351 at *3.

Here, Plaintiff provides no nexus between her employment and interstate commerce, nor does Plaintiff allege facts demonstrating that she engaged in the production of goods so as to establish individual coverage under the FLSA. The Complaint alleges that Plaintiff was employed as a colorist and cleaner, performing duties such as coloring clients' hair, sweeping

floors, and cleaning the salon. (ECF No. 1 at ¶ 7.) It further asserts, in conclusory fashion, that Defendants were engaged in commerce and that Plaintiff handled goods or materials that had moved in interstate commerce, including salon equipment such as scissors, barbicide, curling irons, and dryers. (*Id.* at ¶ 16.) These allegations are insufficient to establish an interstate component to Plaintiff's work. See *Santacruz*, 2021 WL 4341103, at *4 ("As a basic rule, if the plaintiff did not have any contact with out-of-state customers or businesses, he cannot be individually covered under the FLSA.") (internal citations omitted); *see also Zavada*, 2024 WL 759351, at *3 (concluding that although food may have traveled in interstate commerce, plaintiff's work itself did not involve an interstate component). Plaintiff does not allege that she interacted with out-of-state customers, processed interstate transactions, or otherwise directly participated in the flow of interstate commerce.

Moreover, Plaintiff provides no additional factual support beyond these bare assertions. The allegations merely restate the statutory language without connecting Plaintiff's specific job duties to interstate activity. Accordingly, Plaintiff fails to plausibly allege that her work had the requisite interstate nexus. For these reasons, the undersigned respectfully submits that individual coverage under the FLSA has not been established.

### 2. The Employer-Employee Relationship under the FLSA

Where coverage as to the enterprise or individual is established, the Court next analyzes whether Plaintiffs have established an employer-employee relationship under the FLSA. To hold a defendant accountable, a plaintiff must also establish an employee-employer relationship between the parties. *See Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH) (SJB), 2019 WL 8381264, at *6 (E.D.N.Y. Dec. 9, 2019). "Employee" is broadly defined under the FLSA as any "individual employed by an employer." 29 U.S.C. § 203(e)(1).

21

The FLSA defines an employer as "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Employ" is defined as to "suffer or permit to work." 29 U.S.C. § 203(g). Pleadings that allege employee status are sufficient to qualify as an employee under the FLSA. *Cao v. Flushing Paris Wedding LLC*, 727 F. Supp. 3d 239, 273 (E.D.N.Y. 2024) (noting a plaintiff satisfies the definition when he alleges that the "defendants employed them in various positions within this statutory meaning").

The Second Circuit has provided that the employer-employee inquiry should be grounded in "economic reality rather than technical concepts." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). "To determine whether an employee-employer relationship exists under the FLSA, courts within the Second Circuit consider: '(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.'" *Schwartz v. Qazi*, No. 24-cv-00911 (JMW), 2026 WL 63323, at *2 (E.D.N.Y. Jan. 8, 2026) (quoting *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 305 (E.D.N.Y. 2009)). None of these factors are dispositive but courts must look at the "totality of the circumstances" when applying this test. *See Erdemir*, 704 F. Supp. 3d at 358. When determining whether these control factors have been established, courts may analyze the complaint and plaintiff's declarations. *See Thompson v. Hyun Suk Park*, No. 18-cv-6 (AMD)(ST), 2019 WL 1299194, at *3 (E.D.N.Y. Mar. 5, 2019), *report and recommendation adopted*, 2019 WL 1298563 (E.D.N.Y. Mar. 20, 2019).

Here, Plaintiff alleges that she was employed by Defendants and therefore qualifies as an employee under the FLSA. (ECF No. 1 at ¶ 31.) The Complaint alleges that the individual

Defendants had the authority to hire and fire employees, assign work, supervise employees, and maintain payroll records. (*Id.* at ¶¶ 18-22.) Plaintiff further alleges that these Defendants maintained control, oversight, and direction over her employment, including her work schedule and compensation. (*Id.*) In particular, Plaintiff asserts that Defendant A. Hernandez hired her and exercised control over her rate of pay and job duties, while Defendant C. Hernandez Ayala participated in the termination of her employment. (*Id.* at ¶¶ 19–21.) Additionally, Plaintiff alleges that Defendants jointly operated the business as a single enterprise and acted in the interest of the employer with respect to Plaintiff, including establishing and implementing employment and pay practices. (*Id.* at ¶ 22.) These allegations support a finding that Defendants exercised operational control over the business and Plaintiff's employment conditions.

Further, the FLSA contains numerous exemptions for certain employees. *See* 29 U.S.C. § 213. Some exempted employees include bona fide "professional" employees who are compensated on a salary basis at a rate not less than $455 per week and whose primary duties require advanced knowledge in a field of science or learning. *Ghosh v. Neurological Servs. of Queens*, No. 13-CV-1113 (ILG) (CLP), 2015 WL 431807, at *3 (E.D.N.Y. Feb. 3, 2015). However, exemption under the FLSA is an affirmative defense, and the employer bears the burden of proving the exemption by a preponderance of the evidence. *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 54 (2025). Because Defendants have defaulted, any such affirmative defense is deemed waived.

Moreover, none of the FLSA exemptions apply to Plaintiff. Plaintiff performed non-managerial, manual, and routine tasks, including coloring hair, sweeping floors, and cleaning the salon (ECF No. 1 at ¶ 7), and did not exercise the discretion, independent judgment, or advanced knowledge required for the executive, administrative, learned professional, or creative

professional exemptions. *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88 (2018) (holding that FLSA exemptions are to be given a fair, not narrow, interpretation); *Kadden v. VisuaLex, LLC*, 910 F.Supp.2d 523, 527 (S.D.N.Y. 2012) (holding that vocational cosmetology training does not meet the learned professional exemption). Courts in this Circuit have consistently held that manual laborers and cleaning service providers are not exempt. *See McLauglin v. Onanafe Management Solutions LLC*, No. 22-CV-6792 (PKC) (MMH), 2024 WL 4184485, at *8 (E.D.N.Y. Sept. 14, 2024) (holding that cleaning and janitorial service providers are not exempt from FLSA protections); *Ore*, 2022 WL 19520879, at *9 (holding that statutory exemptions did not apply to manual laborers). Because Plaintiff's duties fall squarely outside any FLSA exemption, she is entitled to all applicable minimum wage and overtime protections, and an employer-employee relationship is properly established.

### 3. Whether Plaintiff Was Compensated for Work Performed in Excess of Forty Hours

If Judge Brown agrees and finds that Plaintiff has made sufficient showings that the employment is covered under the FLSA, the Court next analyzes the merits of the Plaintiff's FLSA overtime claims. Under the FLSA, to plead a plausible overtime claim, "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

Here, Plaintiff claims she is owed $5,818.00 in unpaid overtime wages as a result of Defendants' failure to properly compensate her for hours worked in excess of forty hours per week statutory requirement. (ECF Nos. 1 at ¶¶ 39–43, 26-7 at ¶ 6.) Specifically, Plaintiff asserts that she worked approximately seven days per week for a total of approximately eighty-four hours each week. (ECF No.1 at ¶ 9.) Plaintiff further alleges that she was paid a flat daily rate of

24

$300 and did not receive premium overtime compensation for hours worked over forty in a workweek. (*Id.* at ¶¶ 10–11.) As such, Plaintiff contends that she is entitled to recover overtime damages based on Defendants' failure to pay her at the statutorily required regular rate of pay for hours worked in excess of forty per week. (*Id.* at ¶¶ 39–43.) Accepting Plaintiff's allegations as true, as the Court must do on a motion for default judgment, *see Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Construction, LLC*, 779 F.3d 182, 187 (2d Cir. 2015), the Court recommends finding that Plaintiff has established that Defendants failed to pay her statutorily required overtime wages. *Bonilla*, 2025 WL 745906, at *11.

## C.  NYLL Claims

Because the Court recommends a finding of Defendants' liability under the FLSA, the undersigned will explore the merits of Plaintiff's NYLL claims to determine whether an exercise of supplemental jurisdiction over the state claims is appropriate. Here, Plaintiff seeks to hold Defendants liable under the NYLL for unpaid overtime wages, failure to pay minimum wages and for Defendants' failure to provide wage notices and wage statements and failure to pay spread of hours compensation. (*See generally* ECF No. 1.)

"New York's Labor Law is the state analogue to the federal FLSA." *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011). However, the NYLL "does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v. Badyna*, No. 12-cv-4021 (RPM) (CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). Similarly, a plaintiff need not show that defendants engaged in interstate commerce to recover under the NYLL. *See Ethelbert v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015). To recover under the NYLL, a plaintiff must prove "that he was an employee and that Defendants were employer[s] as defined by the statute and accompanying regulations."

25

*Id.* (citing NYLL § 650 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2). The NYLL defines an employer as any "individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer." NYLL § 651(6). An employee is one who is "employed for hire by an employer in any employment." NYLL § 190(2). Further, the test for the employer-employee relationship is based on the same factors as that under the FLSA. *Miranda v. Astoria Provisions, LLC*, No. 19-CV-02923 (EK) (PK), 2020 WL 6370058, at *5 (E.D.N.Y. July 24, 2020).

Here, Plaintiff is entitled to coverage under the NYLL. Even if it is determined that Plaintiff failed to meet the statutory requirements of enterprise or individual coverage under the FLSA, she established the employment relationship under the NYLL by identifying Defendants' control over the daily operations of Salon. Indeed, the NYLL does not require Plaintiff to establish whether the relationship (i) entailed interstate commerce or (ii) involved a defendant that made over $500,000 in annual sales. Therefore, the NYLL applies here.[4]

### 1. *Unpaid Overtime Wages*

To successfully plead an overtime claim under the NYLL, the plaintiffs "must allege only that [they] worked compensable overtime in a workweek longer than forty hours, and that [they] were] not properly compensated for that overtime." *Tackie v. Keff Enter., Inc.*, No. 14-cv-2074 (JPO), 2014 WL 4626229, at *3 (S.D.N.Y. Sept. 16, 2014).

Plaintiff, through the Complaint, alleges that during her employment, she worked approximately seven days per week, totaling eighty-four hours per week. (*See* ECF No. 1 at ¶ 9.) During her employment, Defendants paid Plaintiff $300 per day. (*Id.* at ¶ 10.) These assertions

---

[4] If Judge Brown decides that Plaintiff's FLSA claim falls short of a successful claim and subsequently declines to exercise supplemental jurisdiction over the state claims, the Court recommends that the Complaint be dismissed without prejudice and with leave to renew to cure any deficiencies.

are sufficient for Plaintiff to receive damages for lack of overtime compensation under the NYLL. *See Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028-NGG-SJB, 2018 WL 1770660, at *7–8 (E.D.N.Y. Feb. 6, 2018) (finding plaintiff sufficiently pled an overtime claim under NYLL where he demonstrated through his complaint the amount of hours worked in excess of forty hours).

### 2. *Failure to Pay Minimum Wages*

> Here, as Defendants have defaulted, "it would be unfair to require Plaintiff[] to submit substantial proof of improper compensation given [Defendants'] non-participation in the instant litigation and Plaintiff'[s] inability to obtain the relevant employment records through discovery. *See … Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records.").

*Kim v. Kini LIC Corp.*, 806 F. Supp. 3d 277, 306 (E.D.N.Y. 2025)

New York regulations provide that the "minimum wage" for employees working in in Nassau County is $16.00 per hour on and after January 1, 2024. *See* N.Y. Lab. Law § 652.

Here, Plaintiff contends that Defendants paid her less than the New York statutory minimum wage rate. (ECF No. 1 at ¶¶ 11, 48.) Plaintiff alleges that she worked approximately eighty-four hours per week over seven days, or approximately twelve hours per day. (*Id.* at ¶ 9.) Plaintiff was paid a flat rate of $300 per day. (*Id.* at ¶ 10.) Thus, when simply dividing the daily flat rate of $300 by the twelve hours worked daily, the total hourly rate then equates to $25.00. This hourly rate is not lower than the applicable minimum wage rate for employees working in Nassau County at the relevant timeframe. Accordingly, Plaintiff has failed to establish a valid NYLL claim for failure to pay minimum wages.

### 3. *Wage Notice and Wage Statement Claims*

Plaintiff brings claims under the NYLL alleging that Defendants failed to furnish accurate wage statements for each of her pay periods as required under as required under NYLL § 195(3), along with Defendants' failure to provide her with a wage notice upon her hire as required under NYLL § 195(1). (ECF No. 1 at ¶¶ 55-66.)

Under NYLL's notice and wage statement provisions, employers are statutorily required to provide each employee with notice of their rate of pay and a wage statement listing specific information with each paycheck. N.Y. Lab. L. §§ 195(1)(a), 195(3). The notice must contain "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other." *Id.* § 195(1)(a). Further, the employer must also "obtain from the employee a signed and dated written acknowledgment, in English and in the primary language of the employee, of receipt of this notice." *Id.* The wage statements must include "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions." *Id.* § 195(3). An employer who fails to provide notices and statements is liable for statutory damages. *See id.* § 198(1-b), (1-d).

The Supreme Court has rejected "the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 596 U.S. 413, 426 (2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Article III standing must be satisfied in order to comply with *TransUnion.* "The requirements of Article III standing are well established: '[A] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable

to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (quoting *Spokeo, Inc.*, 578 U.S. at 338). At the default judgment stage, as at the motion to dismiss stage, "the plaintiff still bears the burden of alleging facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (citation omitted).

The Second Circuit has held that "a plaintiff cannot rely on technical violations of the Labor Law" to establish standing. *Guthrie v. Rainbow Fencing*, 113 F.4th 300, 305 (2d Cir. 2024). "A plaintiff may establish standing, however, by establishing 'some causal connection between the lack of accurate notices and [a] downstream harm.'" *Cinar v. R&G Brenner Income Tax, LLC*, No. 20-CV-1362, 2024 WL 4224046, at *3 (E.D.N.Y. Sept. 18, 2024) (quoting *Guthrie*, 113 F.4th at 305). Indeed, when the "gravamen of the complaint is that the denial of plaintiff's statutory right to these documents caused plaintiff to fail to realize that defendants were deducting certain benefits from his wages, resulting in his underpayment," courts have found this demonstrates "a tangible injury resulting from the violation" thus sufficient for Article III standing. *Stih v. Rockaway Farmers Mkt., Inc.*, No. 22-CV-3228 (ARR)(RER), 2023 WL 2760492, at *7 (E.D.N.Y. Apr. 3, 2023)

Further, as *Guthrie* makes clear:

> The legislature may have intended to empower employees to advocate for themselves, but unless the plaintiff-employee can show that he or she would have undertaken such advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided, the plaintiff-employee has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages under § 195.

*Id.* at 308.

29

Here, Plaintiff has adequately pled that she suffered an injury in fact sufficient to satisfy the standing requirement. Plaintiff alleges that Defendants failed to provide her with the required wage notices and wage statements under the New York Labor Law. (ECF No. 1 at ¶¶ 56, 64.) Specifically, Plaintiff asserts that Defendants "failed to furnish Plaintiff with wage notices as required by § 195(1) of the Labor Law" and "failed to furnish Plaintiff with accurate statements of wages, as required by § 195(3)." (*Id.* at ¶¶ 25–27.) Plaintiff further alleges that Defendants' violations were willful, in that Defendants knowingly failed to provide the required documentation. (*Id.* at ¶¶ 57, 65.)

Plaintiff contends that the absence of proper wage notices and statements deprived her of critical information regarding her pay, including the number of hours worked and the wages owed. (*Id.* at ¶ 59.) As a result, Plaintiff was unable to determine whether she was being properly compensated, including whether she was entitled to minimum wage and overtime pay. (*Id.* at ¶ 60.) Plaintiff further avers that Defendants' failure to provide accurate wage statements prevented her from maintaining accurate records of her wages and hindered her ability to take timely action to recover unpaid compensation or advocate for the lost wages properly. (*Id.* at ¶¶ 59–61.) Consequently, Plaintiff has sufficiently alleged that she suffered a concrete and particularized injury, including ongoing underpayment and related economic harm, as a direct result of Defendants' violations of the NYLL. (*See id.*)

Courts in this District have found these allegations to be sufficient for conferring Article III standing upon a plaintiff claiming defendants failed to provide accurate wage notice and wage statement claims. *See, e.g., Reyes v. Crystal Window & Door Sys., Ltd.*, No. 23-CV-2578 (RPK) (JRC), 2024 WL 4028308, at *4 (E.D.N.Y. Sept. 3, 2024) (concluding plaintiff satisfied Article III standing after pleading "that (1) their notices listed an inaccurate overtime rate and pay

30

frequency; (2) as a result, they were kept in the dark about how much and how often they should be paid; (3) they suffered harms in the form of under- and late payments; and (4) had they received the proper disclosures, they would have advocated for themselves and 'acted to rectify the situation' sooner"); *Cinar*, 2024 WL 4224046, at *4 (finding Article III standing satisfied because plaintiff alleged that because of the inaccurate wage notices and statements, plaintiff "did not realize they were misclassified as exempt employees and thus underpaid," and that had they received accurate information, they "would have confronted Defendants and advocated for the proper payment of wages"); *Stih*, 2023 WL 2760492, at *7 (determining plaintiff had standing to bring the wage notice and wage statements claims because he alleged that defendant's failure to provide a proper wage notice injured plaintiff by "denying him the right to be adequately apprised of the terms and conditions of his employment"); *Cuchimaque v. A. Ochoa Concrete Corp.*, No. 22 CV 6136 (RPK) (RML), 2023 WL 5152336, at *6 (E.D.N.Y. July 18, 2023) (holding plaintiff possessed Article III standing where he alleged the breach of defendant's wage statement and notice obligations "injured [plaintiff] by denying [him] the right to know the conditions of [his] compensation, resulting in the underpayment of wages"), *report and recommendation adopted*, 2023 WL 9104384 (E.D.N.Y. Aug. 23, 2023). Plaintiff, therefore, has established it has standing to maintain these causes of action.

Moreover, Plaintiff credibly asserts that Defendants never provided her with an "acknowledgment of pay" notifying her of the rate of pay or a wage statement when she received wages, during her tenure with Defendants, as required under NYLL §§ 195(1) and (3). (*See* ECF No. 27-1, Coreas Decl. ¶ 7.) As such, the undersigned recommends finding that Plaintiff has established a valid NYLL claim for failure to provide wage statements and notices.

### 4. *Spread of Hours Pay*

Under New York law, "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate . . . for any day in which (a) the spread of hours exceeds 10 hours . . . ." N.Y.C.R.R. § 142-2.4; *Rana v. Islam*, 887 F.3d 118, 123 n.3 (2d Cir. 2018). "Spread of hours" is defined as "the interval between the beginning and end of an employee's workday," and includes "working time plus time off for meals plus intervals off duty." N.Y.C.R.R. § 146-1.6; *Alonso Vazquez v. Azoulay*, 834 F. App'x 653, 654 (2d Cir. 2021). Courts calculate spread of hours damages "by multiplying the number of days an employee worked more than ten hours by the basic minimum wage rate." *Pastuizaca v. Mihwa Jo Corp.*, No. 22-CV-5561 (MKB), 2025 WL 437929, at *9 (E.D.N.Y. Feb. 8, 2025) (citing N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4(a)).

Here, during her employment with Defendant, Plaintiff alleges that she worked seven days per week and eighty-four hours in total per week—averaging 12 hours per day. (ECF No. 1 at ¶ 9.) As Plaintiff contends, she never received her spread of hours compensation when Plaintiff worked these shifts in excess of ten hours. (*Id.* at ¶¶ 29, 69.) Accordingly, Plaintiff is entitled to spread of hours compensation under NYLL.

### V. Damages

Once liability for default is established, the next inquiry is damages. A party's default constitutes a concession of all well-pleaded allegations, however such default "is not considered an admission of damages." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). While "the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *See Griffiths v. Francillon*, No. 10-CV-

32

3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quotations omitted), *report and recommendation adopted*, 2012 WL 1354481, at *2 (Apr. 13, 2012); *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)) ("The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty.") Under Rule 55(b)(2), "it [is] not necessary for the District Court to hold a hearing" to determine the amount of damages, "as long as it ensured that there was a basis for the damages specified in the default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see also Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Gilbert*, No. 20-CV-1441, 2022 WL 344270, at *3 (N.D.N.Y. Feb. 4, 2022) ("A hearing is not necessary where the record contains detailed affidavits and documentary evidence that enables the court to evaluate the proposed sum and determine an award of damages."). Here, Plaintiff requests a sum of $18, 782.00 representing the following damages:

- $5,818 in unpaid minimum wage and overtime;

- $5,818 in liquidated damages for unpaid minimum wage and overtime;

- $1,250 WTPA notice;

- $5,000 WTPA paystub;

- $448 in spread of hours pay; and

- $448 in liquidated damages for spread of hours pay.

(ECF Nos. 29-1 at 4; 27-3 at 3.)

In addition, Plaintiff requests $405.00 in costs for the initial filing of the Complaint. (ECF No. 27-3 at 3.) However, Plaintiff waives any request for pre-judgment interest and does

not seek post-judgment interest as that is absent from the memorandum of law. (ECF No. 29-1 at 3.) Each request is analyzed separately below.

### A. Unpaid Overtime Wages & Minimum Wages

"When a defendant fails to appear and produce employment records, the Court may credit a plaintiff's assertions regarding the hours they worked and the compensation they received, even when based only on plaintiff's recollection." *Singh v. Mowla*, No. 19 CV 4687 (PKC)(LB), 2022 WL 17820099, at *10 (E.D.N.Y. Sept. 30, 2022). Notably, a plaintiff may not recover twice under the FLSA and NYLL. *Hosseini v. Miilkiina LLC*, No. 22-CV-1459 (LJL), 2023 WL 7128092, at *6 (S.D.N.Y. Oct. 27, 2023) ("Although Defendants violated the overtime requirements of both the FLSA and NYLL, Plaintiff may not recover twice by collecting awards under both statutes."). Here, Plaintiff seeks a total actual damages award under the FLSA and NYLL of $5,818 but fails to specify how she arrived at this figure. (*See* ECF Nos. 27-1-2.) As such, the Court will determine the amount owed as set forth below.

The minimum wage at the time Plaintiff was employed by Defendants was $16.00, which then means that her overtime rate was $24.00. Plaintiff worked eighty-four (84) hours a week from the time period of November 25, 2024 to December 19, 2024. (*See* ECF No. 1 at 2; ECF No. 27-2.) Put simply, Plaintiff worked an additional 44 hours a week without overtime pay for the four-week period, which totals 176 hours. (*See* ECF No. 27-2.) As reflected in the following chart, taking the difference between the overtime rate Plaintiff was owed and the minimum wage rate that she should have been paid, multiplying that figure by the number of hours Plaintiff worked in excess of forty hours on a given week, and multiplying that number by the number of weeks worked in a payment period results in the total overtime wage figure of $1,408.00. *See Bonilla*, 2025 WL 745906, at *15 (conducting identical math); *Juarez v. Precision Apparel, Inc.*,

No. 12-CV-2349 (ARR)(VMS), 2013 WL 5210142, at *10 (E.D.N.Y. Sept. 13, 2013) ("Where a plaintiff was paid straight time for hours worked in excess of 40 hours, the amount paid for these excess hours is credited against the overtime pay per week. The remainder is the overtime total owed for that week. The totals owing for each week are then aggregated to determine the total amount of overtime wages owed.")

| Payment Period | Minimum Wage Rate | Overtime Rate | Difference Between the Rates | Hours in Excess of 40 Per Week | Weeks Worked | Totals |
|---|---|---|---|---|---|---|
| 11/25/2024 – 12/19/2024 | $16.00/hour | $24.00/hour | $8 | 44 | 4 | $1408.00 |
| **Total** | | | | | | **$1408.00** |

Accordingly, the undersigned recommends awarding Plaintiff $1,408.00 in unpaid overtime wages and declines to recommend any unpaid minimum wages for the reasons established *supra*.

### B. Spread of Hours

Plaintiff also requests unpaid spread of hours compensation in the amount of $448.00 (ECF No. 29-1 at 4.) "Pursuant to the NYLL, employees are entitled to an additional hour of pay at the minimum wage rate for each day an employee's spread of hours exceeded ten hours." *Ore*, 2022 WL 19520879, at *12 (citing 12 N.Y.C.C.R. § 142-2.4) *see Fermin*, 93 F. Supp. 3d at 46. Here, Plaintiff alleges that she worked seven days per week and eighty-four hours in total per week, thereby exceeding 10 hours per day. (ECF No. 1 at ¶¶ 28-29.) Plaintiff contends, she never received her spread of hours compensation when Plaintiff worked these shifts in excess of ten hours. (ECF No. 29-1 at 3.) Accordingly, Plaintiff is entitled to one extra hour of pay at the then-

35

applicable minimum wage for each day that she worked more than ten hours per day. The Court

calculates the spread of hours pay owed to Plaintiff as follows:

| Payment Period | Weeks Worked | Spread of Hours Days Per Week | Applicable Minimum Wage | Spread of Hours Wages Owed (Total) |
|---|---|---|---|---|
| 11/25/2024 – 12/19/2024 | 4 | 7 | $16.00 | $448.00 |
| Total | | | | **$448.00** |

Accordingly, the undersigned recommends awarding Plaintiff $448.00 in unpaid spread

of hours wages under the NYLL. *See Prudencio Trejo v. Blanca's Bakery & Deli Inc.*, No. 23-

CV-06063 (NJC) (JMW), 2025 WL 1029523, at *18 (E.D.N.Y. Jan. 8, 2025), *report and*

*recommendation adopted as modified*, No. 2:23-CV-6063 (NJC) (JMW), 2025 WL 850625

(E.D.N.Y. Mar. 19, 2025).

### C.  Liquidated Damages

Under the NYLL, "[e]mployees may recover liquidated damages of 100% of wages owed

unless 'the employer proves a good faith basis for believing that its underpayment of wages was

in compliance with the law.'" *Fermin*, 93 F. Supp. 3d at 47 (internal citation omitted); *see also*

N.Y. Lab. L. § 198(1–a). Because the FLSA and NYLL liquidated damages deter the same

conduct, the Second Circuit has interpreted the FLSA and NYLL "as not allowing duplicative

liquidated damages for the same course of conduct." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir.

2018). "In light of the principle that 'the law providing the greatest recovery will govern,'

[p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA." *Jian Hua Li*

*v. Chang Lung Grp. Inc.*, No. 16-CV-6722 (PK), 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7,

2020) (citation omitted).

36

Here, Plaintiff asserts she is entitled to $5,818 for liquidated damages for the amount owed in overtime wages. However, as the Court has found Plaintiff is only entitled to $1408.00 for unpaid overtime wages, her entitlement is limited to that sum. Plaintiff is entitled to recover liquidated damages because Defendants did not comply with the NYLL and failed to demonstrate good faith. Indeed, Defendants' lack of good faith is evidenced through the failure to defend this action, even despite receiving ample notice throughout the course of this litigation. *See Lu Nan Fan v. Jenny & Richard's Inc.*, No. 17-CV-6963 (WFK), 2019 WL 1549033, at *11 (E.D.N.Y. Feb. 22, 2019), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019) ("As a result of defendants' default in this action, the record is devoid of evidence of their good faith or reasonable belief."); *Peralta v. M & O Iron Works, Inc.*, No. 12-CV-3179 (ARR) (RLM), 2014 WL 988835, at *10 (E.D.N.Y. Mar. 12, 2014) ("Obviously, as a result of defendants' default in this action, the record is devoid of evidence of defendants' good faith or reasonable belief."). Likewise, Plaintiff seeks liquidated damages for the failure to pay spread of hour wages in the amount of $448.00. (ECF No. 29-1 at 4.) Plaintiff may recover for this as well. *See Villanueva v. 179 Third Ave. Rest Inc.*, 500 F. Supp. 3d 219, 239 (S.D.N.Y. 2020), *report and recommendation adopted sub nom. Villanueva v. 179 Third Ave. Rest. Inc.*, No. 16-CV-8782 (AJN)(RWL), 2021 WL 2139441 (S.D.N.Y. May 26, 2021) ("Accordingly, Plaintiffs are entitled to recover liquidated damages. The amount of liquidated damages is equal to 100% of the amount owed to the Plaintiffs in unpaid wages, which includes unpaid minimum wage, unpaid overtime, and unpaid spread-of-hours.")

Therefore, Plaintiff should be entitled to an amount of liquidated damages equal to the overtime wage damages amount and unpaid spread of hours amount—$1,856.00. *See Leo v. Province Therapeutics, LLC*, No. 23-CV-05418 (NJC) (JMW), 2024 WL 2923945, at *4

37

(E.D.N.Y. May 21, 2024), *report and recommendation adopted,* No. 23-CV-05418 (NJC) (JMW), 2024 WL 2891798 (E.D.N.Y. June 10, 2024).

### D. **Defendants' Statutory Violations**

Plaintiff seeks $6,250.00 for statutory damages concerning Defendants' violations pursuant to NYLL §§ 195(1), (3) for failure to provide wage notices and wage statements. (ECF Nos. 1 at 10-11; 27-1.) "Violations of NYLL § 195(1) carry damages of $50 per workday, for a maximum of amount of $5,000." *Rowe v. CC Restaurant & Bakery, Inc.*, No. 17-CV-01423 (CBA) (PK), at *8 (E.D.N.Y. Aug. 15, 2019) (citing NYLL § 198(1-b)). Similarly, "[v]iolations of NYLL § 195(3) carry damages of $250 per workday, for a maximum amount of $5,000." *Id.* As recommended *supra*, Plaintiff has established the requisite liability to recovery. Accordingly, Plaintiff is entitled to the statutory maximum of $5,000 under § 195(3), and then $1,250.00 under § 195(1), a figure arrived by multiplying $50.00 per each day worked,  for a total of $6250.00 (*see* ECF No. 29-1 at 4). *See Ming Hui v. Shorty's Seafood Corp.*, No. 15-CV-7295 (RJD) (ST), 2017 WL 5054401, at *10 (E.D.N.Y. Sept. 6, 2017), *report and recommendation adopted*, 2017 WL 5125527 (E.D.N.Y. Nov. 2, 2017). (finding defendants never provided plaintiff with any written notice or wage statements and thereby awarding plaintiff an award under §§ 195 (1), (3)).

### CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Plaintiff's Motion for Default Judgment (ECF No. 27) be **GRANTED**, and that judgment be limited to the following damages: (i) **$1,408.00** in unpaid overtime wages; (ii) **$448.00** in unpaid spread of hours compensation; (iii) **$1,856.00** in liquidated damages under the NYLL; and (iv) **$6,250.00** in statutory violations pursuant to NYLL §§ 191(1), (3), for a total sum of damages in the amount of **$9,962.00**.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served through ECF on all counsel. Counsel for Plaintiff is directed to serve copies of this Report and Recommendation upon Defendant on or before April 27, 2026, and file proof of service of the same ECF. Any written objections to this Report and Recommendation must be filed within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. 2011); Fed. R. Civ. P. 6(a), 72(b); *see also Nambiar v. The Central Orthopedic Group LLP*, No. 24-1103 (2d Cir. Oct. 28, 2025) (addressing timing and scope of objections to Reports and Recommendations). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days precludes further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated: Central Islip, New York.
     April 22, 2026

RESPECTFULLY RECOMMENDED,

/S/ *James M. Wicks*
     JAMES M. WICKS
United States Magistrate Judge

39